## James L. Weil *v.* Cheryl Miller

Speziale, C. J., Peters, Healey, Parskey and Armentano, Js.

Argued October 16—decision released November 17, 1981

*Herbert V. Camp, Jr.,* for the appellant (plaintiff).

*Richard C. Jacobson,* with whom, on the brief, was *Jonathan A. Mellitz,* for the appellee (defendant).

Peters, J. This case challenges the constitutionality of abode service under General Statutes § 52-57. The plaintiff, James Leonard Weil, sued the defendant, Cheryl Miller, d/b/a/ The Tapestry Oriental Dance Troupe, to set aside a default judg-

ment that Miller had earlier procured against him, to enjoin execution on the judgment and to vacate attachment and judgment liens on his real property. After a hearing on an order to show cause, the trial court rendered a judgment against the plaintiff from which he appeals.

In its memorandum of decision the trial court found the following facts, none of which is challenged on this appeal. Because of difficulties between the parties which arose in August, 1978, the defendant brought an action against the plaintiff for damages. The defendant's attorney wrote the plaintiff threatening suit; the plaintiff received this letter. The defendant thereafter initiated her suit by an attachment and by a writ served on the plaintiff on December 13, 1978, through abode service at his place of residence in Branford.[1] The deputy sheriff served process by pushing open the rear door of the premises and leaving the writ near a kitchen stove. Although the abode service complied with the requirements of General Statutes § 52-57, the defendant denied having received this writ.

In the earlier action between the defendant and the plaintiff, a default was entered against the plaintiff on February 9, 1979. A hearing in damages resulted, on May 30, 1979, in a judgment of $7000 against the plaintiff. From December 26, 1978 to July, 1979, the plaintiff was in Florida. The plaintiff denied receipt of any notice of the default proceedings.

The present action appears to have resulted from the defendant's levy of an execution on the plaintiff's property. This execution was issued on Octo-

---

[1] The plaintiff's residence was the area behind the stage and on the second floor of a small theater; no one else resided on the premises.

ber 3, 1979, more than four months after the entry of the judgment against the plaintiff. Claiming that this was his first notice of the previous litigation, the plaintiff filed his action on December 18, 1979.

The plaintiff's appeal raises three issues: the constitutionality of General Statutes § 52-57[2] permitting abode service; the constitutionality of General Statutes § 52-212a[3] limiting to four months

[2] "[General Statutes] Sec. 52-57. MANNER OF SERVICE UPON INDIVID-UALS, MUNICIPALITIES AND CORPORATIONS. Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state. Process in civil actions against the following-described classes of defendants shall be served as follows: In actions against a town, upon its clerk, assistant clerk, manager or one of its selectmen; against a city, upon its clerk or assistant clerk or upon its mayor or manager; against a borough, upon its manager, clerk or assistant clerk or upon the warden or one of its burgesses; against a school district, upon its clerk or one of its committee; against other municipal or quasi-municipal corporations, upon its clerk or upon its chief presiding officer or managing agent. In actions against private corporations, service shall be made either upon the president, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent or manager or upon any director resident in this state, or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in which its principal office or place of business is located. In actions against private corporations established under the laws of any other state, any foreign country or the United States, service may be made upon any of the aforesaid officers or agents, or upon the attorney of such corporation appointed pursuant to section 33-400."

[3] "[General Statutes] Sec. 52-212a. CIVIL JUDGMENT OR DECREE REOPENED OR SET ASIDE WITHIN FOUR MONTHS ONLY. Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set side unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court."

the period when default judgments may be opened; and the constitutionality of Practice Book §§ 352 and 122[4] allowing notice of a motion for default to be sent by ordinary rather than by certified mail. Since the record fails to reveal that the latter two issues were raised in the trial court, there is no need for us to consider them, and we decline to do so.

---

[4] "[Practice Book] Sec. 352. MOTION FOR DEFAULT AND NONSUIT FOR FAILURE TO APPEAR

"(a) If no appearance has been entered for any party to any action on or before the second day following the return day, any other party to the action may make a motion that a nonsuit or default be entered for failure to appear, and, subject to the provisions of Secs. 80, 353 and 366, such motion may be granted.

"(b) It shall be the responsibility of counsel filing a motion for default for failure to appear to serve the defaulting party with a copy of the motion. Service and proof thereof may be made in accordance with Secs. 121, 122 and 123. Upon good cause shown, the court may dispense with this requirement when judgment is rendered.

"(c) Except as provided in Sec. 355, motions for default for failure to appear shall be printed on the short calendar. Unless the moving party requests that such a motion be marked off or unless the moving party is also requesting that judgment be rendered immediately after the entry of the default, the court shall grant the motion without the need for the moving party to appear at short calendar, provided the defendant has not appeared and the court is satisfied that proper service has been made and that the requirements of subsection (a) above have been met. A motion for nonsuit for failure to appear shall be printed on the short calendar. If it is proper to grant the motion, the court shall grant it without the need for the moving party to appear at the short calendar."

"[Practice Book] Sec. 122. ———— ————METHOD OF SERVICE

"Service upon the attorney or upon a party, except service pursuant to Sec. 121 (c), may be made by delivering a copy to him or by mailing it to him at his last known address. Delivery of a copy within this rule means handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein, or if the office is closed or the person to be served has no office, leaving it at his dwelling house or usual place of abode. Service by mail is complete upon mailing. Service pursuant to Sec. 121 (c) shall be made in the same manner as an original writ and complaint is served or as ordered by the court."

Practice Book § 3063;[5] *State* v. *Cuvelier,* 175 Conn. 100, 111, 394 A.2d 185 (1978); *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 466, 378 A.2d 547 (1977); cf. *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973).

Resolution of the first issue is complicated by the imperfect state of the record before us. The parties' arguments on the constitutionality of abode service proceed on two diametrically opposite factual premises. The plaintiff argues that abode service is constitutionally defective because it fails to provide adequate notice and hence violates the requirements of procedural due process.[6] He distinguishes *Smith* v. *Smith,* 150 Conn. 15, 22, 183 A.2d 848 (1962), in which this court upheld the constitutionality of § 52-57, by asserting that the defendant there had actual notice while he, the plaintiff herein, never received adequate notice of the proceedings in the Miller action and hence was deprived of a timely opportunity to be heard. The defendant maintains, however, that the plaintiff's constitutional attack on § 52-57 is unwarranted because the plaintiff did in fact receive notice, which he chose to ignore, at a time when the earlier judgment against him could readily have been opened. Although there is conflicting evidence in the transcript on the disputed fact of whether the plaintiff received notice of the earlier proceedings at a relevant time, the trial court made no finding.[7]

---

[5] We note that these two issues received only cursory treatment in the plaintiff's brief in this court and in the oral argument presented to us.

[6] U.S. Const., amend. XIV § 1; Conn. Const., art. I § 8.

[7] The plaintiff could have protected himself on the record by requesting a special finding on this issue. General Statutes § 52-226; Practice Book § 332.

It is clear that the disputed fact about notice is crucial to the plaintiff's case. The plaintiff nowhere argues that he would now be entitled to raise his constitutional claim relating to the abode service statute if he had received actual notice of the abode service and of the subsequent legal proceedings within four months after the entry of the default judgment against him. On the contrary, he complains that the defendant's delay in seeking execution on her judgment until more than four months had elapsed was an artful maneuver designed to keep him from taking advantage of the four month period for the opening of judgments provided by General Statutes § 52-212a.[8]

The centrality of notice in fact to the constitutional issue of procedural due process is illuminated by a comparison of this case with *Kron* v. *Thelen,* 178 Conn. 189, 197, 423 A.2d 857 (1979). In *Kron,* this court held that General Statutes § 45-289 must be construed to require a probate court to give notice of its decree before the statutory appeal period from probate court judgments can begin to run. This holding was compelled by "[f]undamental tenets of due process, [which], require that all persons directly concerned in the result of an adjudication be given reasonable notice and the opportunity to present their claims or defenses." Id., 193; *Hanson* v. *Denckla,* 357 U.S. 235, 245, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958); *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct.

---

[8] It should be noted that the plaintiff did not attempt to pursue the remedy provided him by § 52-270 which states in relevant part: "The superior court may grant a new trial of any cause that may come before it, for . . . want of actual notice of the suit to any defendant . . . ." Section 52-270a (a) permits such a petition for a new trial to be brought within three years of the date of the judgment.

652, 94 L. Ed. 865 (1950); *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.*, 168 Conn. 371, 385, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976); *City Trust Co.* v. *Bulkley,* 151 Conn. 598, 601, 201 A.2d 196 (1964); *Proctor* v. *Sachner,* 143 Conn. 9, 17, 118 A.2d 621 (1955). In *Kron,* however, the party complaining that the Probate Court proceedings deprived her of her constitutional rights did not have actual notice. On the contrary, she had been erroneously informed by the court that no action had as yet been taken. The finding that she lacked notice in fact was an essential premise of her challenge to the constitutionality of § 45-289.

According to well-established principles, a plaintiff who challenges the constitutionality of a statute must prove that the statute has adversely affected a constitutionally protected right "under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist." *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698 (1966); *State* v. *Cuvelier,* 175 Conn. 100, 111–12, 394 A.2d 185 (1978); *Gentile* v. *Altermatt,* 169 Conn. 267, 307, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Kellems* v. *Brown,* 163 Conn. 478, 483, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1972); *Adams* v. *Rubinow,* 157 Conn. 150, 152–53 251 A.2d 49 (1968). Furthermore, a person contesting a statute's constitutionality has a heavy burden to establish its invalidity beyond a reasonable doubt. *Roundhouse Construction Corporation* v.

*Telesco Masons Supplies Co.,* supra, 385; *Kellems* v. *Brown,* supra, 486; *Adams* v. *Rubinow,* supra, 152.

On the present state of the record, the plaintiff has not sustained his burden of proof. This court cannot find facts; that function is, according to our constitution, our statute, and our cases, exclusively assigned to the trial courts. Conn. Const., art. V § 1; General Statutes § 51-199;[9] *Belledeau* v. *Connecticut Co.,* 110 Conn. 625, 633, 149 A. 127 (1930); *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 538, 129 A. 527 (1925). Without a finding that the plaintiff had no notice in fact, the plaintiff's attack on the statute permitting abode service must fail.

There is no error.

In this opinion the other judges concurred.

---

[9] Conn. Const., article fifth § 1, provides that "[t]he judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law."

General Statutes § 51-199 provides that the Supreme Court "shall have final and conclusive jurisdiction of all matters brought before it according to law, and may carry into execution all its judgments and decrees and institute rules of practice for its regulation."